IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANASTASIA WINSTEAD,       )<br>                            )<br>     Plaintiff,           )<br>                            )<br>v.                          )   Case No. CIV-23-00956-JD<br>                            )<br>CARTER-YOUNG, INC.,         )<br>                            )<br>     Defendant.           )| |

# ORDER

Before the Court is Defendant Carter-Young, Inc.'s ("Carter") Motion to Dismiss ("Motion") [Doc. No. 3]. Carter seeks to dismiss Plaintiff Anastasia Winstead's ("Winstead") Complaint [Doc. No. 1] under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). Winstead filed a Response [Doc. No. 8], and the parties filed several notices of supplemental authority [Doc. Nos. 11, 12, 13, 14, 15]. For the following reasons, the Court grants the Motion on 12(b)(6) grounds.

## I.   BACKGROUND

Winstead reviewed her credit report on IdentityIQ. The report reflected a $2,794.00 debt allegedly owed to Bryant Place Apartments which Carter, a consumer debt collector, sought to collect. Winstead mailed a dispute letter to Carter via certified mail requesting validation of the debt. In the letter, Winstead told Carter that the only convenient way to contact her was by email. She also provided her email. After Carter received the letter, it sent Winstead verification of her debt by mail—not email—and attempted to collect the debt.

Winstead filed suit against Carter for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), asserting a single claim for relief under § 1692c(a)(1) or 12 C.F.R. § 1006.14(h)(1). Winstead claims she "suffered actual damages as a result of [Carter's] illegal collection tactics . . . in the form of invasion of privacy, [intrusion] upon [seclusion], personal embarrassment, loss of productive time, emotional distress, frustration, anger, humiliation," and "other negative emotions." [Doc. No. 1 at 4].

## II.     LEGAL STANDARDS

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial or factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial challenge, a district court must accept the allegations in the complaint as true. *Id.* However, in a factual attack, the moving party may go beyond the allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* A district court may not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack on subject matter jurisdiction. *Id.* Rather, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

Once challenged, the burden of proving subject matter jurisdiction is on the party alleging subject matter jurisdiction, here, the plaintiff. *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797–98 (10th Cir. 2002) (explaining that "conclusory allegations of jurisdiction are not enough"; plaintiff must "show, by a preponderance of

the evidence, that jurisdiction exists" (internal quotation marks and citations omitted)); *see Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). Carter presents a facial challenge to subject matter jurisdiction. When the Court's jurisdiction over a claim is in question, the jurisdictional issue is a threshold matter that the Court must resolve before reaching other matters that may dispose of the claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

"Rule 12(b)(6) dismissal 'is appropriate if the complaint alone is legally insufficient to state a claim.'" *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1169 (10th Cir. 2023) (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017)). The Court must "view the allegations and all reasonable inferences in favor of the plaintiffs." *Hubbard v. Okla. ex rel. Okla. Dep't of Hum. Servs.*, 759 F. App'x 693, 696 (10th Cir. 2018) (unpublished). In considering a motion to dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Woodard*, 912 F.3d 1278, 1299 (10th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679.

### III. ANALYSIS

Carter argues the Court does not have subject matter jurisdiction over this case because Winstead's injury is not sufficiently "concrete" to satisfy Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Alternatively, Carter contends the suit should be dismissed because Winstead has not sufficiently alleged a valid claim under the FDCPA. Winstead maintains that she has alleged concrete harm to demonstrate she has standing, and that Carter violated § 1692c(a)(1) or § 1006.14(h)(1) by mailing her verification of her debt.

#### A.   The Court has subject matter jurisdiction over this case.

"To have standing, a plaintiff must show that she '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Because Article III's standing requirement "is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 340–41; *see also Seale v. Peacock*, 32 F.4th 1011, 1020 (10th Cir. 2022) ("Applying this standard, the Supreme Court has identified 'reputational harms, disclosure of private information, and intrusion upon seclusion' as examples of concrete, intangible harms") (quoting *TransUnion*, 594 U.S. at 425); *cf.*

4

*Susinno v. Work Out World Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017) (explaining that the close relationship to a harm traditionally providing a basis for a lawsuit in English or American courts "does not require that the newly proscribed conduct would give rise to a cause of action under common law" but that it "protect the same interests implicated in the traditional common law cause of action" (internal quotation marks and citation omitted)).

"The FDCPA limits how debt collectors can pursue certain types of debt and creates a private right of action when they violate those limitations . . . . But to invoke that right, 'a violation of a legal entitlement alone is insufficient.'" *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827 (10th Cir. 2022) (quoting *Laufer v. Looper*, 22 F.4th 871, 878 (10th Cir. 2022)). In *TransUnion,* a Fair Credit Reporting Act case, the Supreme Court explained that "[f]or standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." 594 U.S. at 426–27. Specifically, it concluded that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 434. However, traditional tangible harms, like physical and monetary injury to the plaintiff, "readily qualify as concrete injuries under Article III." *Id.* at 425. Intangible harms can also be concrete, and those harms that traditionally have been recognized as providing a basis for lawsuits include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

Here, the injury Winstead alleges is invasion of privacy and intrusion upon seclusion. "At common law, courts readily recognized a concrete injury arising from the tort of intrusion upon seclusion—a tort protecting against defendants who intrude into the private solitude of another." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021); *see also TransUnion*, 594 U.S. at 424 (explaining that courts should ask "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury" but it "does not require an exact duplicate"). The Tenth Circuit has held that a plaintiff who received one unwanted phone call "about her alleged debt could pursue an FDCPA claim because her harm was analogous to the tort of intrusion upon seclusion. Although a single call may have been insufficient for traditional tort liability, it was still the same kind of harm, *i.e.*, an intrusion into her privacy." *Shields*, 55 F.4th at 829 (citation omitted); *see Lupia*, 8 F.4th at 1192 ("Though a single phone call may not intrude to the degree required at common law, that phone call poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet.").

Admittedly, Winstead received an unwanted letter, not an unwanted phone call that she did not answer, like Lupia. But § 1692c appears to "'elevate a single unwanted message to the status of a legally cognizable injury, and it pertains to consumer privacy such that its purpose is at least partly to prevent the kinds of harm associated with invasion of privacy torts like intrusion upon seclusion.'" *Leichliter v. Optio Sols., LLC*, 672 F. Supp. 3d 1165, 1172 (W.D. Okla. 2023) (quoting *Vazzano v. Receivable Mgmt. Servs., LLC*, No. 3:21-CV-0825-D, 2022 WL 17406317, at *3 (N.D. Tex. Dec. 2,

2022)).[1] This, coupled with the Tenth Circuit's holdings in *Lupia* and *Shields*, persuades the Court that Winstead has alleged a sufficiently concrete injury for purposes of Article III standing in this FDCPA context.

## B. Winstead has failed to state a claim for relief under the FDCPA.

Winstead alleges that Carter violated 15 U.S.C. § 1692c(a)(1) in its communication with her. That provision states:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location . . . .

"If the statute's text is unambiguous, then its plain meaning controls, and [the court's] inquiry ends." *United States v. Broadway*, 1 F.4th 1206, 1211 (10th Cir. 2021).

Here, Winstead does not allege that Carter sent the letter to the wrong address, i.e., "place." Instead, she maintains that the medium Carter used was inconvenient. She explains that by utilizing snail mail, as opposed to email, Carter violated the FDCPA. But § 1692c(a)(1) does not prohibit any specific medium of communication, it just limits the time and place of communication.

---

[1] *See Lupia*, 8 F.4th at 1192 (explaining that while the common law offers guidance to analogize the kind of harm, it does not set the limits of Congress's power to identify harms and recognizing that "[i]n enacting the FDCPA, Congress recognized that abusive debt-collection practices may intrude on another's privacy interests") (citations omitted).

Winstead also alleges that 12 C.F.R. § 1006.14(h) prohibits Carter's conduct. In relevant part, that regulation states, "In connection with the collection of any debt, a debt collector must not communicate or attempt to communicate with a person through a medium of communication if the person has requested that the debt collector not use that medium to communicate with the person." *Id.* However, this general mandate includes several exceptions:

> (i) If a person opts out of receiving electronic communications from a debt collector, a debt collector may send an electronic confirmation of the person's request to opt out, provided that the electronic confirmation contains no information other than a statement confirming the person's request and that the debt collector will honor it;
>
> (ii) If a person initiates contact with a debt collector using a medium of communication that the person previously requested the debt collector not use, the debt collector may respond once through the same medium of communication used by the person; or
>
> (iii) If otherwise required by applicable law, a debt collector may communicate or attempt to communicate with a person in connection with the collection of any debt through a medium of communication that the person has requested the debt collector not use to communicate with the person.

12 C.F.R. § 1006.14(h)(2).

Carter's alleged conduct falls under these exceptions—specifically (ii) and (iii). Here, Winstead alleges that she requested that Carter contact her via email but reached out to it via letter, and Carter responded once through that same medium. And, as Carter argues in its Motion, when a consumer disputes a debt and requests verification, the debt

8

collector must "mail[]" verification "to the consumer." 15 U.S.C. § 1692g(b).² Thus, the Court determines that Carter's alleged conduct is either covered by § 1006.14(h)(2)(ii) or (iii).

The Tenth Circuit has not addressed these particular issues under 15 U.S.C. § 1692c(a)(1) or 12 C.F.R. § 1006.14(h). However, other district courts have concluded similarly to this Court in FDCPA cases. *See, e.g.*, *Marks v. Javitch Block LLC*, No. 1:23-CV-431-MJT-CLS, 2024 WL 1134037, at *2 (E.D. Tex. Mar. 14, 2024) ("Plaintiff does not state that the place at issue—his home—was inconvenient, but rather the medium of the communication—a letter—caused harm."); *Kirk v. Credit Mgmt. L.P.*, No. 2:23-CV-482-ECM, 2024 WL 3240564, at *2 (M.D. Ala. June 28, 2024) ("[P]ursuant to § 1006.14(h)(2), [Defendant] was allowed to contact the Plaintiff once via letter, which [Defendant] did when [it] sent the Plaintiff a verification letter in response to the Plaintiff's mailed letter of dispute."). In light of the text of the provisions and this persuasive authority, the Court determines Winstead has failed to allege a plausible violation of 15 U.S.C. § 1692c(a)(1) or 12 C.F.R. § 1006.14(h).

## IV. <u>CONCLUSION</u>

For these reasons, the Court is satisfied it has subject matter jurisdiction over this case but concludes Winstead has failed to state a claim for relief that is plausible on its

---

² In her Response, Winstead argues that "[t]he alleged debt in question has been pas[t] due" since 2017 so 15 U.S.C. § 1692g(b), which includes a variety of deadlines and timing requirements, no longer applies. [Doc. No. 8 at 12]. However, her Complaint does not include any allegations that suggest § 1692g(b) is inapplicable.

face. It therefore GRANTS Carter's Motion to Dismiss. [Doc. No. 3]. Winstead's Complaint is dismissed without prejudice.

    IT IS SO ORDERED this 16th day of September 2024.

                                                                              JODI W. DISHMAN
                                                                              UNITED STATES DISTRICT JUDGE